**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | |
| | ) | No. 15 CR 00350-11 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| NATHAN DRIGGERS, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

A jury convicted defendant Nathan Driggers in April 2017 of one count of possession of a firearm by a prohibited person. Driggers then moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, or in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33. For the reasons set forth in this Memorandum Opinion, Driggers' motion [335] is denied.

## BACKROUND

In reviewing the jury's verdicts, this Court views the facts in the light most favorable to the government. *See United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013). Driggers' trial began with jury selection on April 17, 2017, and the jury returned its verdicts three days later on April 20, 2017. The jury convicted Driggers of one count ("Count One") of possession of a firearm by a prohibited person—in his case, a felon—and acquitted him of one count ("Count Two") of possession of a stolen firearm.[1] As to Count One, the Court instructed the jury, as

---

[1] The Court refers to these charges as Counts One and Two in this Opinion for the sake of clarity. Driggers was actually charged in Counts Eight and Nine of a Third Superseding Indictment in which his codefendants were also named. Count Eight charged Driggers, in relevant part, with knowing possession of "approximately 30 firearms, including a Ruger .22 caliber pistol, bearing serial number 490-63683, which firearms had been stolen from a railroad

agreed by the parties, that a finding of guilty required the government to prove each of three elements beyond a reasonable doubt:

> 1. The defendant knowingly possessed a firearm, as described in the indictment;
>
> 2. At the time of the charged act, the defendant had been convicted of a crime punishable by a term of imprisonment exceeding one year; and
>
> 3. The firearm, or firearms, had been shipped or transported in interstate or foreign commerce.

*See* Jury Instructions at 9, ECF No. 314. Stipulations reached by the parties addressed the second and third elements of this charge, leaving the jury to focus on the first element.

In particular, at trial the government read a stipulation to the jury that on April 12, 2015, Andrew Shelton, Elgin Lipscomb, Alexander Peebles, Terry Walker, Patrick Edwards, Dandre Moody, Frederick Lewis, and Marcel Turner stole approximately 104 new Ruger firearms from a railroad car in Chicago. These individuals were all codefendants of Driggers, though only he was on trial at this proceeding. This same stipulation also relayed that these 104 firearms were part of a shipment from a Ruger factory in New Hampshire traveling to a distributor in Spokane, Washington, and that the approximately 30 firearms with which Driggers was charged with possessing were among those stolen by eight other individuals on April 12, 2015. The stipulation also said that among that subset of 30 firearms was the Ruger .22 caliber pistol with serial number 49063683 that was later recovered at 12719 South Halsted Street in Chicago on September 10, 2015. Additional stipulations read at trial said that all of the approximately 30 Ruger firearms referred to in Counts One and Two of the indictment—including the

---

car on April 12, 2015," in violation of Title 18, United States Code, Section 922(g)(1). *See* Third Superseding Indictment at 9, ECF No. 89. Count Nine charged Driggers with that same possession "knowing and having reasonable cause to believe that the firearm was stolen," in violation of Title 18, United States Code, Section 922(j). *Id.* at 10.

aforementioned .22 caliber pistol—were operational firearms that traveled in interstate commerce before April 12, 2015, and that Driggers had previously been convicted in 2001 of manufacturing and delivering cannabis, a felony offense.

The government called Turner, one of the eight men that the parties here agreed took part in the train robbery, as a witness at Driggers' trial. Turner's testimony reflected that he had pled guilty in the present case and entered into a cooperation agreement—with the expectation of a reduced sentence recommendation from the government—as part of that plea, but had not yet been sentenced. Turner also testified on direct examination that during the initial meetings he had with the government as part of his cooperation, he had not been completely honest about his involvement with the train theft and events thereafter. He testified that he had initially failed to tell agents about a particular sale of firearms that he had helped to broker on behalf of another defendant, but that he had since told the government all that he knew about his own involvement in the train theft.

Turner's testimony recounted his participation in the April 12, 2015 train robbery (he served primarily as a driver) and indicated that later that day, Turner, Walker, and Lewis brought approximately 30 of the stolen firearms to what Turner referred to variously as a shop or store. Turner identified the shop in a photograph exhibit which, as later testimony by a Chicago Police Officer indicated, depicted the building at 12719 South Halsted Street. Turner testified that at the shop, Walker spoke to a man named Nate, whom Turner had seen on several prior occasions. Turner made a courtroom identification of defendant Driggers as Nate, and went on to testify that after Walker and Driggers had spoken, Turner, Lewis, and Walker unloaded the 30 firearms from Walker's vehicle and carried them into the shop. Turner also referred to another individual who was present during these events at the shop, but did not or could not identify that person. Turner

testified that Walker and Driggers negotiated prices for the guns and, once an agreement had been reached, Driggers began counting out cash that he had retrieved from his pants pocket. Turner testified that he did not see Driggers hand the cash to anyone because he was asked to leave the store at that time, but that once Walker and Lewis exited the store some ten minutes later, Walker handed Turner approximately $1,700 in cash. Turner testified that he saw Walker and Lewis in possession of even bigger wads of cash than the one Turner received.

Jason Vachy, a Chicago Police Officer detailed to the Bureau of Alcohol, Tobacco, Firearms, and Explosives, testified that law enforcement officers executed a search warrant on September 10, 2015, at the property located at 12719 South Halsted Street. Vachy identified the building where the warrant was executed from a photograph exhibit, the same one that Turner testified depicted the shop where Driggers had purchased the guns from the train robbery. Vachy's testimony and the admitted photograph and video exhibits indicated that the building appeared to be an unmarked storefront that contained televisions, Abercrombie and Fitch clothing, and other items that Vachy characterized as merchandise still in its original packaging. Vachy testified that during the execution of the warrant at 12719 South Halsted, agents found and seized the stolen Ruger firearm with serial number 49063683, which was introduced as evidence. Vachy also testified—over objections from Driggers' counsel—that law enforcement officers executed search warrants for rental storage units associated with an individual named Warren Gates. In those storage units, officers found six stolen Ruger firearms, among other items, Vachy told the jury.

Additional testimony indicated that Driggers shared, in some manner, the property at 12719 South Halsted with an individual named Yashmine Odom. The owner of that building testified that he leased it to Driggers—whom he called "Nate" and identified in the courtroom—

and Odom as co-lessees. The owner's property manager testified similarly. Vachy also testified that agents found mail and other documents at that property that had Driggers' or Odom's names on them, and that law enforcement agents had concluded in their investigation that Driggers and Odom were the leaseholders for that address. Finally, another Chicago Police Officer, Rene Saucedo, testified that when he responded to a call on August 12, 2015, involving Driggers as the complaining witness, Driggers provided 12719 South Halsted Street as his address, and also provided his phone number.

Other evidence the government presented at trial included telephone records and so-called cell site records, presented in part through an expert witness on historical cell site analysis. Telephone records showed that Driggers and Walker were in contact multiple times on the day of the train robbery, April 12, 2015, and also showed calls between Driggers and codefendant Moody that same day. Phone records also showed calls between Driggers and Gates on April 13, 2015—the day after Driggers' charged date of possessing the firearms—after there had been no prior phone contact between them during all of 2015 up to that point. The government's expert testified that cell site records, meanwhile, indicated that phones associated with Walker, Turner, Lewis, and Driggers all connected to cell towers in the general vicinity of 12719 South Halsted Street on April 12, 2015, within the timeframe of 3:00 p.m. and 4:00 p.m., which was largely consistent with Turner's testimony regarding the approximate timing of the sale of firearms to Driggers.

At the conclusion of the government's presentation of evidence in its case-in-chief, Driggers' counsel made an oral Rule 29 motion for a judgment of acquittal. Defense counsel argued that the evidence was insufficient to support a conviction, and that Turner's credibility in particular was so weak that a judgment of acquittal was appropriate. This Court denied that

motion, noting that Turner's testimony had been corroborated by other evidence in the case and that the evidence was sufficient to support a jury verdict that Driggers, a felon, had unlawfully possessed the stolen Ruger. The defense then rested without presenting evidence of its own.

## ANALYSIS

Rule 29 provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Where a court denies a Rule 29 motion before the case goes to the jury for consideration, as happened here, a defendant may renew his motion after the jury issues a guilty verdict. *See* Fed. R. Crim. P. 29(c). Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Driggers raises three very abbreviated arguments in his four-page post-trial motion, and this Court addresses them each in turn.

### I. Sufficiency of the Evidence

Driggers argues that the government presented insufficient evidence of his knowing possession of the Ruger, largely because Turner's testimony was uncorroborated and not credible. Mot. at 2. "A defendant who makes an insufficient evidence claim 'faces a nearly insurmountable hurdle.'" *United States v. Tucker*, 737 F.3d 1090, 1092 (7th Cir. 2013) (quoting *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009)). Driggers must show that "based on the evidence presented at trial, no rational juror could find guilt beyond a reasonable doubt." *United States v. Ajayi*, 808 F.3d 1113, 1119 (7th Cir. 2015) (quoting *Morris*, 576 F.3d at 666) (internal quotation marks omitted). In addition, the Seventh Circuit has repeatedly recognized that "[a] verdict may be rational even if it relies solely on circumstantial evidence." *United States*

v. *Lawrence*, 788 F.3d 234, 242 (7th Cir. 2015) (quoting *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009)); *United States v. Haddad*, 652 Fed. App'x 460, 462 (7th Cir. 2016) (quoting same); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction."). In evaluating an insufficient evidence claim, courts "view the evidence in the light most favorable to the government." *Ajayi*, 808 at 1119 (quoting *Morris*, 576 F.3d at 666) (internal quotation marks omitted).

Driggers cannot clear this significant hurdle. He argues that Turner's testimony cannot support his conviction because Turner lied to prosecutors and the grand jury and changed his story on multiple occasions. But the Seventh Circuit has remarked that it is "distinctly within the province of the jury to weigh the consistency of [a witness's] testimony and assess his overall credibility." *United States v. Elder*, 840 F.3d 455, 460-61 (7th Cir. 2016); *see also id.* (citing *United States v. Muthana*, 60 F.3d 1217, 1223 (7th Cir. 1995) ("Assessing a witness'[s] credibility 'is a matter inherently within the province of the jury.'")). The fact that Turner admitted he minimized his conduct when he first spoke to law enforcement did not preclude the jury from crediting his testimony; even perjury does not "warrant disregarding a witness's entire testimony as a matter of law." *Allen v. Chicago Transit Authority*, 317 F.3d 696, 703 (7th Cir. 2003). Rather, the credibility of witnesses is left to the jury to assess unless it "contradicts indisputable physical facts or laws." *United States v. Kuzniar*, 881 F.2d 466, 470–71 (7th Cir. 1989). That is certainly not the case here. Moreover, the jurors were appropriately cautioned that

his testimony should be considered "with caution and great care." Jury Instructions at 8; *Pattern Criminal Jury Instructions of the Seventh Circuit* § 3.05 (2012 ed.).[2]

In any event, the government did not rely solely on Turner's testimony in presenting its case, but instead presented additional pieces of evidence that were consistent with, and corroborated much of what Turner said on the stand. Testimony of the landlord and building manager provided evidence that Driggers leased the building that Turner described as the firearm sale location, and testimony regarding the merchandise at that property was consistent with Turner's description of the building as a shop. The cell phone records and cell site data also corroborated Turner's testimony that he and other codefendants brought firearms to that location and sold them to Driggers on April 12, 2015. That evidence also established that the day after the robbery, Driggers was talking to Gates, who was subsequently found to be in possession of six of the guns stolen during the robbery when law enforcement officers searched his storage units.

Driggers argues that the "only other proof" of his knowing possession, besides Turner's testimony, was that agents found "a firearm" at the property he shared with Odom. *See* Mot. at 2. This argument ignores many additional pieces of evidence, including those set out above, and also denies the significance of agents' discovery of that weapon. The parties stipulated that Driggers was a convicted felon, that eight other men stole Ruger firearms from a train, that the firearm that agents found at 12719 South Halsted Street was one of those stolen weapons, and that all of the stolen guns had travelled in interstate commerce. Evidence that agents discovered a firearm that Driggers concedes was stolen, at a property that multiple witnesses testified he leased, was therefore significant, and furthermore was consistent with Turner's testimony. Taken

---

[2] To the extent that Driggers' Rule 33 motion is founded upon his argument that Turner's testimony was too unreliable to credit, the Court finds Turner's testimony to have been quite credible. His testimony was plausible, did not overreach, and, as noted further below, was corroborated by, and consistent with, other evidence.

together and viewed in the light most favorable to the government, the evidence presented at trial was more than sufficient to allow a reasonable jury to convict Driggers.

**II. Jury Instruction on Joint Possession**

Driggers also argues that this Court erred by giving the jury an instruction for "constructive possession." Mot. at 2-3. The government correctly notes that the Court actually gave an instruction for "joint possession," not "constructive possession," and so this Court construes the argument as one challenging the joint possession instruction. *See* Resp. at 7 n.1; *see also* Jury Instructions at 11. That instruction read as follows:

> More than one person may possess an object. If two or more persons share possession, that is called 'joint' possession. If only one person possesses the object, that is called 'sole' possession. The term 'possess' in these instructions includes both joint and sole possession.

Jury Instructions at 11. Driggers' counsel objected to the joint possession instruction during the jury instruction conference, and this Court overruled the objection. Driggers argues in his motion that there was no evidence to support the use of this instruction, and that while the government did prove that a gun was found during a search of the property Driggers shared with Odom, "there was no evidence to connect Odom to the gun." Mot. at 3.

But this argument fails for the same reason the objection failed during the jury instruction conference. This Court overruled that objection because it was Driggers' own counsel who had pursued cross-examinations of several witnesses aimed at suggesting that it was Odom who was, or who might have been, responsible for the discovered firearm. Driggers' counsel had also pursued cross-examination questions concerning the other, unnamed individual whom Turner testified was present at the store on April 12, 2015, at the time Turner said the firearm transaction occurred. Given the specter of these two other potential possessors of the firearm,

then, the instruction as to joint possession was appropriate. "In order to receive a new trial based on erroneous instructions, a defendant 'must show both that the instructions did not adequately state the law and that the error was prejudicial to [him] because the jury was likely to be confused or misled.'" *United States v. White*, 443 F.3d 582, 587 (7th Cir. 2006) (quoting *United States v. Smith*, 415 F.3d 682, 688 (7th Cir. 2005)). Rather than confusing or misleading the jury, the use of the joint possession instruction here likely reduced the risk that the jury would be misled into thinking that any possession by Odom or the other unnamed individual necessarily absolved Driggers of responsibility. The instruction here also correctly stated the law; its source is the Seventh Circuit's pattern criminal jury instructions. *See Pattern Criminal Jury Instructions of the Seventh Circuit* § 4.13 (2012 ed.). Driggers' jury instruction argument thus fails as well.

**III. Admission of Evidence Regarding Guns Found in Co-Defendant's Storage Units**

Driggers' final argument is that this Court erred in admitting evidence that agents found stolen guns in Gates' storage units. Mot. at 3. Driggers asserts that this evidence was irrelevant, and raised that objection at trial. In his motion, Driggers argues that the fact that Gates' storage units held stolen firearms did not go toward proving that Driggers possessed any of those guns. *Id.* The government exacerbated the problem, Driggers argues, by telling the jury that those firearms were ones Turner had sold to Driggers, and suggesting that Driggers then sold those firearms to Gates, a story for which Driggers argues there is no evidence. *Id.* Driggers argues that the government actually had evidence to the contrary, saying that an Alcohol, Tobacco, Firearms, and Explosives agent testified on June 30, 2015 that another defendant had sold Gates

these particular guns. *Id.* Driggers provides no citation or other evidence in support of that assertion.[3]

Admission of the Gates storage unit evidence was not erroneous because that evidence was relevant under the test set forth in Federal Rule of Evidence 401. *See* Fed. R. Evid. 401 (evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action"). Gates' storage units contained six firearms stolen in the train robbery. Driggers was charged in the indictment with possessing multiple firearms. After months of no contact occurring between the cell phone numbers the government presented for Driggers and Gates, suddenly, on April 13, 2015—the day after Driggers purchased the firearms, according to Turner—Gates and Driggers were on the phone. It would be reasonable to infer that, having purchased 30 stolen guns, Driggers would start trying to locate buyers for the guns and that Gates, who in fact was later found to have six of the stolen guns in his storage units, was one of the buyers Driggers contacted. That is particularly so given the fact that Driggers did not otherwise appear to have a significant connection or relationship with Gates; the phone records showed that they had not communicated by phone in months before Driggers called on April 13. This evidence is hardly dispositive, and would certainly not suffice on its own to establish Driggers' possession of the stolen guns, but that is not the test of admissibility. It was relevant because it has some tendency to make the fact of Driggers' possession of stolen guns on April 12, 2015, more probable; the jury could draw a reasonable inference from this and other evidence that Driggers possessed

---

[3] A one-sentence assertion regarding some allegedly contrary testimony by a law enforcement agent, with no citation to the source of the testimony, and no additional context or argument as to that point, does not suffice. In the words of the Seventh Circuit, "'it is not this court's responsibility to research and construct the parties' arguments.'" *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) (quoting *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002)).

those firearms before they ended up in Gates' storage units. The admission of the evidence was not erroneous and the government's suggestion in its closing argument that the jury could draw such an inference was not improper.[4] Driggers' argument regarding the admission of this evidence falls flat.

* * *

The government introduced sufficient evidence for a reasonable jury to convict Driggers of possession of a firearm by a prohibited person. The jury instruction regarding joint possession was proper, and the evidence regarding Gates's storage units was relevant. Driggers' motion for acquittal or a new trial is therefore denied.

Date: July 12, 2017

John J. Tharp, Jr.
United States District Judge

---

[4] Driggers does not argue that the evidence should have been excluded as unduly prejudicial under Rule 403 and there is no basis to do so. The evidence was not of a nature to inflame the jury against Driggers, it was a very minor part of the government's presentation, and Driggers' counsel had the opportunity to explain the limited probative value of the evidence during closing argument.